THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:09-CV-72-FL

CHERYL BASS AS GUARDIAN AD )
LITEM FOR AHNB, )
 )
    Plaintiff/Claimant, )
 ) **MEMORANDUM AND**
    v. ) **RECOMMENDATION**
 )
MICHAEL J. ASTRUE, Commissioner )
of Social Security, )
 )
    Defendant.

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Cheryl Bass ("Bass") filed this action pursuant to 42 U.S.C. § 1383(c)(3) on behalf of her minor daughter, Claimant AHNB ("Claimant"), seeking judicial review of the denial of Claimant's application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Bass filed an application for SSI payments on behalf of Claimant on 27 October 2005, alleging disability as a result of attention deficit hyperactivity disorder and borderline intellectual functioning. (R. 24, 26). The claim was denied initially and upon reconsideration. (R. 24-29,

53-56, 59-61). A hearing before the Administrative Law Judge ("ALJ") was held on 27 February 2007, at which Claimant appeared with counsel but did not testify and Bass appeared and testified. (R. 176-89). On 11 December 2007, the ALJ issued a decision denying Claimant's request for benefits. (R. 7-23). On 26 February 2009, the Appeals Council denied Claimant's request for review. (R. 3-5)). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained

his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

Under the Act, a claimant under the age of eighteen is considered "disabled" for purposes of eligibility for SSI payments if she has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which has lasted or can be expected to last for a continuous period of at least twelve months, or results in death. 42 U.S.C. § 1382c(a)(3)(C)(i). Social Security regulations provide a three-step sequential evaluation process for determining whether a minor is disabled. 20 C.F.R § 416.924.

First, the ALJ must determine whether the minor is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If so, the minor is not disabled; but if not, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments. *Id.* § 416.924(c). For a minor, a medically determinable impairment or combination of impairments is not severe if it is a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.* If the minor is determined to have severe impairments, the analysis progresses to step three where the ALJ considers whether the minor has an impairment or combination of impairments that meets, medically equals, or functionally equals a Listing. *Id.* § 416.924(d). If so, the minor is conclusively disabled, but if not, the analysis ends. *Id.* § 416.924(d)(1). In this case, Claimant alleges that substantial evidence fails to support the ALJ's finding that Claimant's impairments do not functionally equal a listed impairment. Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 4. ("Pl.'s Mem.").

3

# FACTUAL HISTORY

## I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment. (R. 13). Next, the ALJ determined Claimant had the following severe impairments: attention deficit hyperactivity disorder ("AD/HD") and borderline intellectual functioning disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet, medically equal or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

## II. Cheryl Bass' Testimony at the Administrative Hearing

Cheryl Bass, Claimant's mother, testified at the administrative hearing. According to Bass, Claimant, who was nine years old at the time of the hearing, is in the second grade after repeating first grade and has received speech therapy services. (R. 181, 184). While Claimant is not presently enrolled in special education classes, she will soon be enrolling in such classes as school administrators were in the process of developing an individualized educational plan ("IEP") for Claimant. (R. 181-82). Claimant does not read well and has difficulty with language, mathematics and social studies, but does well in physical education and art classes. (R. 182, 187-88).

With respect to Claimant's school behavior, Claimant displays agitation, jumpiness and talkativeness. (R. 182). Claimant has been suspended from school on one occasion and without constant supervision, Claimant does not complete her homework. (R. 183). Claimant socializes

well with her parents and siblings but is shy around strangers. (R. 184). Claimant only has one friend. (R. 185).

Claimant was diagnosed with AD/HD at the age of three and takes medication to treat this condition. (R. 183-84). While Claimant's present medication provides some benefit, increasing the dosage worsens Claimant's agitation. (R. 185). Claimant can swing, play ball, ride a bike, play some board games and use a computer. (R. 186). Claimant is also capable of buttoning shirts, tying shoelaces, bathing, brushing her teeth and preparing a sandwich or getting cereal without assistance. (R. 186-87).

## DISCUSSION

**The ALJ's determination that Claimant's impairments do not functionally equal a listing is not supported by substantial evidence.**

Claimant's sole contention before the Court is whether the ALJ erred in finding her impairments do not functionally equal a listing. *See* Pl.'s Mem. at 13-19.

If a minor's impairments do not meet or medically equal a listing, 20 C.F.R. § 416.926a directs an assessment of whether the "interactive and cumulative effects of all impairments . . . including [non-severe impairments]" functionally equal a listing. In making this determination, the regulations require consideration of six "domains," which are "broad areas of functioning intended to capture all of what a [minor] can and cannot do." 20 C.F.R. § 416.926a(b)(1). These six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). A finding of

functional equivalence requires that the minor has either "marked"[1] limitations in two domains or an "extreme"[2] limitation in one domain. *Id.* § 416.926a(d).

---

[1] A "marked" limitation is defined in relevant part as follows:

> (i) [Y]our impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
> . . .
>
> (iii) [Y]ou have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score. . . .
> . . .

20 C.F.R. § 416.926a(e)(2).

[2] An "extreme" limitation is defined in relevant part as follows:

> (i) [Y]our impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.
> . . .
>
> (iii) [Y]ou have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score . . . .
> . . .

20 C.F.R.§ 416.926a(e)(3).

With the exception of finding that Claimant suffered from a "marked limitation" in "acquiring and using information," the ALJ found that Claimant suffered from either "no" limitation or a "less than marked" limitation with respect to the remaining five domains. (R. 17-22). Claimant avers however that the ALJ erred in not finding that Claimant suffered from a "marked" limitation in her ability (1) to attend and complete tasks and (2) to interact and relate with others. Pl.'s Mem. at 14-15.

A.  *Issuance of Social Security Rulings subsequent to the ALJ's decision*

Subsequent to the ALJ's decision, the Commissioner issued several Social Security Rulings ("S.S.R.") regarding childhood disability determinations. *See generally* S.S.R. 09-1p, 2009 SSR LEXIS 1, at *30, 2009 WL 396031, at *13 (explaining how the agency determines childhood disability under the functional equivalence rule and cross-referencing S.S.R. 09-2p, 09-3p, 09-4p, 09-5p, 09-6p, 09-7p and 09-8p). Following the issuance of S.S.R. 09-1p, the agency issued separate rulings regarding each functional equivalence domain, including the domains of attending and completing tasks and interacting and relating with others - the two at issue here. *See* S.S.R. 09-4p, 2009 SSR LEXIS 4, 2009 WL 396033 (discussing the functional equivalence domain of *attending and completing tasks*); S.S.R. 09-5p, 2009 SSR LEXIS 5, 2009 WL 396026 (discussing the functional equivalence domain of *interacting and relating with others*).

Each of these rulings merely consolidates information from the agency's regulations existing and in affect at the time of the ALJ's decision. *See e.g.*, S.S.R. 09-1p, 2009 SSR LEXIS 1, at *30, 2009 WL 396031 (explaining purpose of the ruling is to "provide[] policy interpretations and consolidate[] information from [the SSA's] regulations, training materials, and question-and-answer documents about [it's] 'whole child' approach for determining whether

7

a child's impairment(s) functionally equals the listings"); S.S.R. 09-4p, 2009 SSR LEXIS 4, 2009 WL 396033 (consolidating the SSA's information about the functional equivalence domain of attending and completing tasks); S.S.R. 09-5p, 2009 SSR LEXIS 5, 2009 WL 396026 (consolidating the SSA's information about the functional equivalence domain of interacting and relating with others). For example, S.S.R. 09-1p discusses the regulations governing childhood disability, including 20 C.F.R. §§ 416.924, 416.624a, 416.926a – regulations in effect at the time of the ALJ's decision. Similarly, S.S.R. 09-4p and S.S.R. 09-5p repeat the considerations required of the SSA when evaluating a child's functioning in the domains of "attending and completing tasks," as set forth in 20 C.F.R. § 416.926a(h), and of "interacting and relating with others," as set forth in 20 C.F.R. § 416.926a(i), respectively. *See* S.S.R. 09-4p, 2009 SSR LEXIS 4, 2009 WL 396033; S.S.R. 09-5p, 2009 SSR LEXIS 5, 2009 WL 396026. Accordingly, these rulings impose no new requirements on the Commissioner.

B.  *A child's functioning in unusual settings*

In determining disability for children, the regulations provide a list of considerations to be taken into account, one of which is a child's functioning in "unusual settings." *See generally* 20 C.F.R. § 416.924a(b). In particular, when considering a child's functioning in unfamiliar or one-to-one settings, the regulations provide that:

> *Children may function differently in . . . [such] settings than they do in their usual settings at home, at school, in childcare or in the community.* [Children] may appear more or less impaired on a single examination (such as a consultative examination) than indicated by the information covering a longer period. . . . *We will look at your performance in a special situation and at your typical day-to-day functioning in routine situations.* We will not draw inferences about your functioning in other situations based only on how you function in a one-to-one, new, or unusual situation.

8

20 C.F.R. § 416.924a(b)(6) (emphasis added).[3] Citing Social Security Ruling 09-2p, 2009 SSR LEXIS 2, 2009 WL 396032, Plaintiff contends the ALJ relied improperly upon the accounts of examiners who observed Plaintiff in unfamiliar or special circumstances. *See* Pl.'s Mem. at 7.

As discussed above, the new agency rulings issued subsequent to the ALJ's decision are merely a consolidation of material and regulations pre-dating the ALJ's decision, including 20 C.F.R. § 416.924a(b)(6). *See* S.S.R. 09-2p, 2009 SSR LEXIS 2, 2009 WL 396032 (explaining its purpose is to "provide policy interpretations and *consolidates information from [SSA] regulations*, training materials, and question-and-answer documents about documenting and evaluating evidence of a child's impairment-related limitations . . . ."). For example, S.S.R. 09-2p explains, *inter alia*, how the SSA addresses inconsistencies in the evidence and warns that at times, "an apparent inconsistency may not be a true inconsistency."[4] S.S.R. 09-2p, 2009 SSR LEXIS 2, at *29, 2009 WL 396032, at *12. The following example is provided:

> [T]he record for a child with attention-deficit/hyperactivity disorder (AD/HD) may include good, longitudinal evidence of hyperactivity at home and in the classroom, but show a lack of hyperactivity during a CE [consultative examination]. While this may appear to be an inconsistency, it is a well-known clinical phenomenon that *children with some impairments (for example, AD/HD) may be calmer, less inattentive, or less out-of-control in a novel or one-to-one setting, such as a CE.*

---

[3] The final rules (effective 2 January 2001) regarding the "unusual setting" regulation explain that the regulation reflects the SSA's "longstanding policy" of "not consider[ing] any single piece of evidence in isolation from the other relevant evidence in the case record." Determining Disability for a Child Under Age 18, 65 Fed. Reg. 54747, 54753-54 (Sept. 11, 2000). The rules explain further that "there are medical impairments (such as [AD/HD]) that may not be as manifest in unusual settings as they are in typical settings, such as at home and in school." *Id.*

[4] As stated in S.S.R. 09-2p, the SSA's policy regarding the evaluation of evidence for consistency is "also contained in other rules on evidence, including . . . 20 CFR 416.924a(a) [considerations in determinating disability for children]" - a regulation in effect at the time of the ALJ's decision. S.S.R. 09-2p, 2009 SSR LEXIS 2, at *26 n.23, 2009 WL 396032 at *12 n.23.

9

Case 7:09-cv-00072-FL Document 23 Filed 01/07/10 Page 9 of 17

*Id.* (emphasis added). The ruling provides further that the above example

> highlights the importance of getting a full picture of the "whole child" and of [the SSA's] longstanding policy that [it] must consider each piece of evidence in the context of the remainder of the case record. *Accepting the observation of the child's behavior or performance in an unusual setting, like a CE, without considering the rest of the evidence could lead to an erroneous conclusion about the child's overall functioning.*

*Id.* (emphasis added). S.S.R. 09-2p, thus, reiterates the SSA's policy of considering the whole child and the inter-relationship of multiple impairments and limitations on all activities, and pursuant to 20 C.F.R. § 416.924a(b)(6), not relying solely on observations of a child's behavior in unusual settings. *See* 20 C.F.R. § 416.926a(b) (explaining the SSA considers how appropriately, effectively, and independently a child performs activities at home, school and in the community compared to the performance of other children of like age who do not have impairments); 20 C.F.R. § 416.926a(c) (explaining when the SSA evaluates a child's functioning and decides which domains may be affected by a child's impairment(s), it looks first at the child's activities, limitations and restrictions); *accord* S.S.R. 09-1p, 2009 SSR LEXIS 1, at *5, 2009 WL 396031, at *2 (explaining the SSA has "long called [the] technique [for determining functional equivalence its] 'whole child' approach"). Accordingly, S.S.R. 09-2p does not alter the analysis required of the ALJ in determining whether Claimant functionally equals the listings.

C.   *Attending and Completing Tasks*

This domain requires consideration of how well a claimant focuses and maintains attention and begins, carries through, and finishes activities, including the pace at which those activities are performed. 20 C.F.R. § 416.926a(h); *see* S.S.R. 09-4p, 2009 SSR LEXIS 4, at *6,

10

2009 WL 396033, at *2. School-age children (age 6 to attainment of age 12)[5] should be able to focus their attention in a variety of situations to follow directions, remember and organize school materials, and complete assignments. 20 C.F.R. § 416.926a(h)(2)(iv); *see* S.S.R. 09-4p, 2009 SSR LEXIS 4, at *15, 2009 WL 396033, at *4. They should be able to concentrate on details and not make careless mistakes (beyond what would be expected for a child of that age), change activities or routines without distracting themselves or others, stay on task and in place when appropriate, and sustain attention well enough to participate in group sports, read by themselves, and complete chores. *Id.* The regulations provide examples of limited functioning in this domain that do not necessarily describe a marked or extreme limitation: the claimant is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; the claimant is slow to focus on or fails to complete activities of interest, like games or art projects; the claimant repeatedly becomes sidetracked or frequently interrupts others; the claimant is easily frustrated and gives up on tasks; the claimant requires extra supervision. 20 C.F.R. § 416.926a(h)(3).

The ALJ found Claimant's limitations in the domain of attending and completing tasks to be less than marked. (R. 19). In reaching this conclusion, the ALJ relied upon, in part, the accounts of examiners who observed Claimant in atypical settings.[6] For example, the ALJ noted that Jerry Miller, M.A., a state agency consultative examiner, observed that Claimant, who was

---

[5] The ALJ noted that Claimant was born on 5 December 1997 and was therefore a school-age child on 27 October 2005, the application filing date, and was a school-age child as of the date of the ALJ's decision. (R. 13).

[6] The opinions of state agency non-examining consultants, Frank Virgili, M.D., and Camille Warren, M.D., indicate also that Claimant's limitations in this domain were less than marked. (R. 106, 112); *see* 20 C.F.R. § 404.1527(f)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."). As ALJ acknowledged, however, the opinions of non-examining physicians do not deserve as much weight as those of examining or treating physicians. (R. 17).

11

on medication the day of the examination (February 2006), did not appear overactive or fidgety. (R. 19, 94). Also, the ALJ referenced treatment notes from Bladen Medical Center ("BMC") indicating Claimant's AD/HD was stable with the use of medication and the lack of AD/HD signs upon examination (R. 19, 143, 145, 147, 152, 156). The ALJ pointed out also a May 2006 evaluation for possible sexual abuse for which Claimant was to receive continuing therapy as well as for her AD/HD but noted that Claimant "did not apparently receive any further therapy." (R. 19, 100-03).

The ALJ discussed also evidence of Claimant's functioning with respect to this domain in routine settings, such as in the home and at school. For example, the ALJ acknowledged Ms. Bass' testimony that she had to "steadily remind" Claimant to complete her school work. (R. 15). The ALJ noted further that while Ms. Bass believed Claimant's medications proved beneficial, Claimant still suffered from agitation. (R. 16). Finally, the ALJ noted that Claimant played games at home. (R. 16).

With respect to school performance, the ALJ acknowledged an SSA questionnaire, dated 9 January 2006, completed by Claimant's first grade teacher, Sylvia Jacobs, who reported that Claimant "had a serious problem with carrying out multi-step instructions with obvious problems in sustaining attention during play/sports activities; organizing her own things or school materials; completing class/homework assignments; completing work accurately without careless mistakes; and working at a reasonable pace/finishing on time."[7] (R. 19, 87). However, the ALJ noted also "academic reports indicat[ing] some academic achievement in the 2nd grade," *see* (R. 19, 134, 139), despite Claimant's 25 absences and 33 tardy arrivals during the prior

---

[7] Ms. Jacobs noted also that Claimant had an "obvious" problem in "[w]orking without distracting self or others." (R. 87).

12

school year, which the ALJ deemed unrelated to Plaintiff's impairments. *See* (R. 16) (observing the lack of evidence "indicat[ing] that these frequent absences and tardiness was a result of the claimant's severe impairments"). Indeed, Claimant earned "more than satisfactory grades in conduct and physical education with satisfactory marks in music and art, needs improvement marks in math and unsatisfactory marks in integrated curriculum and communication skills." (R. 16, 134).

While the ALJ correctly did not focus solely on Claimant's functioning in unusual settings, the ALJ failed to acknowledge that the examinations by BMC or Mr. Miller were conducted in such a setting. *See* 20 C.F.R. § 416.924a(b)(6). Moreover, the ALJ fails to discuss the weight accorded to any of the above evidence, including the treatment notes from BMC and Mr. Miller's opinion. This failure is especially important because the regulations indicate an understanding by the SSA that an impaired child may appear less impaired in an unusual setting. *See* 65 Fed. Reg. 54747, 54781. Rather, upon summarizing the evidence, the ALJ simply concluded "[a]ccordingly, the undersigned finds a less than marked limitation in this domain." (R. 19). This error cannot be harmless as "[w]ithout an analysis of all evidence *and a sufficient explanation of the weight given to obviously probative exhibits*[,] it is not possible to determine if the ALJ's decision is supported by substantial evidence." *Ivey v. Barnhart*, 393 F. Supp. 2d 387, 389-390 (E.D.N.C. 2005) (citation and quotation marks omitted) (emphasis added). Accordingly, the Court cannot conclude that the ALJ's determination that Claimant suffered from a less than marked limitation in attending and completing tasks is supported by substantial evidence.

D.  *Interacting and Relating with Others*

This domain requires consideration of how well a claimant "initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i); *see* S.S.R. 09-5p, 2009 SSR LEXIS 5, at *6, 2009 WL 396026, at *2. School-age children should be able to develop lasting friendships with other children the same age, begin to understand how to work in groups to create projects and solve problems, speak in a manner that both familiar and unfamiliar listeners can readily understand, have an increasing ability to tolerate differences and understand others' points of view, and be able to talk to people of all ages to share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners can readily understand. 20 C.F.R. § 416.926a(i)(2)(iv); *see* S.S.R. 09-5p, 2009 SSR LEXIS 5, at *18-19, 2009 WL 396033, at *6. The regulations provide examples of limited functioning in this domain that do not necessarily describe a marked or extreme limitation: the claimant does not reach out to be picked up and held by the caregiver; the claimant has no close friends, or the friends are all older or younger; the claimant avoids or withdraws from people who are known, or is overly anxious or fearful of meeting new people or trying new experiences; the claimant has difficulty playing games or sports with rules; the claimant has difficulty communicating with others; and the claimant has difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

Plaintiff again raises the same argument as that discussed above, contending the ALJ relied improperly upon the accounts of examiners who observed Plaintiff in unfamiliar or special circumstances. *See* Pl.'s Mem. at 12. The ALJ found Claimant had less than marked limitations in the domain of interacting and relating with others. (R. 20). In reaching this conclusion, the

14

ALJ did rely upon, in part, the accounts of examiners who observed Claimant in atypical settings.[8] For example, the ALJ acknowledged a February 2006 pediatric speech language pathology examination where, upon completion, Claimant was diagnosed with "expressive language delay-moderate" and a mild articulation delay. (R. 20, 96). During the speech evaluation, the speech language pathologist, Nicole Caldwell, M.A., observed that Claimant displayed stubborn behavior, was difficult to engage, often refused to answer difficult questions, was quick to abandon difficult tasks and occasionally exhibited total non-compliance by refusing to respond to testing prompts. *Id.* However, that same month, Dr. Miller reported that Claimant was friendly, cooperative and pleasant, able to express herself adequately without any significant limitation in vocabulary and that Claimant reported that she had friends and enjoyed social activities, including playing with dolls. (R. 20, 93-94). The ALJ noted also that treatment notes from BMC indicated that Claimant was alert and oriented and able to participate in medical examinations. (R. 20).

The ALJ discussed also evidence of Claimant's functioning with respect to this domain in routine settings, such as in the home and at school. For example, the ALJ acknowledged Ms. Bass' testimony that while Claimant socialized well with family members, she was shy around others. (R. 16). The ALJ noted further Ms. Bass' testimony that Claimant had only one friend. *Id.* Finally, the ALJ acknowledged Ms. Bass' testimony that Claimant received speech therapy services. (R. 15).

With respect to school performance, the ALJ again acknowledged the SSA questionnaire completed by Ms. Jacobs. (R. 20). Ms. Jacobs noted that Claimant "ha[d] been removed from

---

[8] The opinions of the state agency non-examining consultants indicate also that Claimant's limitations in this domain were less than marked. (R. 106, 112).

15

Case 7:09-cv-00072-FL Document 23 Filed 01/07/10 Page 15 of 17

the classroom because of behavior; refusing to do classwork, and not communicating" and the Claimant had an "obvious problem" with relating experiences and telling stories. (R. 20, 88). The ALJ acknowledged also Ms. Jacobs observation that Claimant kept to herself and did not communicate very much with teachers or students (although there were times when Claimant talked a little more than usual). (R. 20, 86). Despite these observations, however, Ms. Jacobs indicated also that Claimant had "no problem" playing cooperatively with others, making and keeping friends and using language appropriate to the situation and listener and experienced only a "slight problem" in following rules, respecting/obeying adults in authority, "interpreting meaning of facial expression, body language, hints, sarcasm" and "using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation." (R. 88). Ms. Jacobs reported also that Claimant was "a very sweet child . . . [who] tries very hard academically" and that almost all of Claimant's speech was understood on the first attempt. (R. 20, 89, 92).

As with his discussion of the evidence in the domain of attending and completing tasks, the ALJ did not focus solely on Claimant's functioning in unusual settings. Nonetheless, the ALJ failed to acknowledge that the examinations by BMC or Mr. Miller were conducted in such a setting. Furthermore, the ALJ did not discuss the weight accorded the above evidence. Rather, upon summarizing the above evidence, the ALJ concluded "the undersigned find that the claimant was generally able to interact with adults, her family, and peers without significant limitation." (R. 20). Accordingly, the Court cannot conclude that the ALJ's determination that Claimant suffered from a less than marked limitation in interacting and relating with others is supported by substantial evidence.

16

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 7th day of January, 2010.

Robert B. Jones, Jr.
United States Magistrate Judge