IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 7:09-CV-72-FL

| | |
|---|---|
| CHERYL BASS<br>as Guardian ad Litem for ANHB,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | ORDER |

This matter comes before the court on the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (DE ## 17, 21). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Robert B. Jones, Jr. entered a memorandum and recommendation ("M&R") wherein he recommended that the court grant plaintiff's motion, deny defendant's motion, and remand the case to the Commissioner for further proceedings (DE # 23). Defendant timely filed an objection to the M&R (DE # 24), to which no response was made. In this posture, the matter is ripe for ruling. For the reasons that follow, the court adopts the M&R, grants plaintiff's motion, denies defendant's motion, and remands to the Commissioner.

## STATEMENT OF THE CASE

On October 27, 2005, plaintiff filed an application for Supplemental Security Income ("SSI") payments on behalf of claimant ANHB, her daughter. The application alleged disability as a result of attention deficit hyperactivity disorder ("ADHD") and borderline intellectual functioning. The claim was denied initially and upon reconsideration. On February 27, 2007, plaintiff and claimant appeared before an administrative law judge ("ALJ"). At this hearing, claimant was represented by

counsel. On December 11, 2007, the ALJ issued a decision denying plaintiff's application. The Appeals Council denied plaintiff's request for review on February 26, 2009.

On May 4, 2009, plaintiff moved for leave to proceed *in forma pauperis*, with copy of the complaint attached, and requested to be appointed *guardian ad litem* to represent the interests of ANHB before this court. The magistrate judge granted these motions on May 5, 2009. Defendant answered on July 9, 2009, and filed the administrative copy with this court shortly thereafter. On August 26, 2009, plaintiff moved for judgment on the pleadings, and defendant followed suit on November 19, 2009.

In her motion, plaintiff argues that the ALJ erred in finding that claimant's limitations did not functionally equal the listings, while defendant argues that the ALJ's finding was supported by the record.[1] The specific finding challenged by plaintiff is that claimant had a marked limitation only in "acquiring and using information."[2] Plaintiff contends that claimant has marked functional limitations in two additional domains, specifically "attending and completing tasks" and "interacting and relating with others." Defendant argues that the ALJ's finding that claimant had less than marked limitations in these two domains is supported by substantial evidence.

---

[1] To functionally equal the listings, an individual must have an extreme functional limitation in one domain of functioning or marked functional limitations in at least two domains. 20 C.F.R. § 416.926a. The domains of functioning listed by the regulations are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id. § 416.926a(b)(1).

[2] A "marked" limitation is defined in part as:
[Y]our impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
20 C.F.R. § 416.926a(e)(2).

The motions were referred to the magistrate judge for M&R. On January 7, 2010, the magistrate judge recommended that the court grant plaintiff's motion, deny defendant's motion, and remand to the Commission for further proceedings. The magistrate judge noted that the ALJ failed to acknowledge that certain examinations relied upon in his decision were conducted in atypical settings, and failed to discuss the weight accorded to such evidence in light of the regulations' acknowledgment that an impaired child may appear less impaired in an unusual setting. Because of these failures, the magistrate judge found that he could not conclude that substantial evidence supported the ALJ's decision. Defendant timely filed objection; plaintiff did not respond.

## DISCUSSION

A.   Standard of Review

This court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's denial of benefits. This court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds) (citing 42 U.S.C. §§ 405(g), 1383(c)(3); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in making such a determination, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition" of a variety of motions, including motions for judgment on the pleadings. 28 U.S.C.

3

§ 636(b)(1)(B). In addressing plaintiff's objection to the M&R, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

B.  Defendant's Objections

Defendant submits two narrow objections for this court's consideration. First, defendant contends that the regulations at issue do not require an ALJ to acknowledge or note which evidence is based on observations from unfamiliar or one-on-one settings and which is based on observations of routine situations. According to defendant, it is enough simply that the ALJ relied on more than merely unfamiliar or one-on-one situations in reaching his conclusion. Second, defendant construes the magistrate judge as relying in part on the ALJ's failure to discuss the weight accorded to the treatment notes provided by claimant's treating physician and the report provided by the Disability Determination Services ("DDS") consultative examiners. Defendant argues that the ALJ did in fact discuss the weight accorded to these opinions.

1.  Substantial Evidence Does Not Support the ALJ's Findings

Defendant does not dispute that the regulations recognize that "[c]hildren may function differently in unfamiliar or one-to-one settings than they do in their usual settings at home, at school, in childcare or in the community . . . [and] may appear more or less impaired on a single examination (such as a consultative examination) than indicated by the information covering a longer period." 20 C.F.R. § 416.924a(b)(6). Nor does defendant deny that the ALJ is to consider typical day-to-day functioning in routine situations along with special situations, and must "not draw inferences about

4

. . . functioning in other situations based only on how [a child] function[s] in a one-to-one, new, or unusual situation." Id. Defendant contends, however, that the ALJ has met his only burden under these regulations because he did rely on both types of evidence, whether or not he explicitly stated which evidence is which or what weight he assigned to each.

Assuming the ALJ need not have explicitly identified which evidence comes from routine situations and which does not, the court nevertheless concludes that "[w]ithout . . . a sufficient explanation of the weight given to obviously probative exhibits it is not possible to determine if the ALJ's decision is supported by substantial evidence." Ivey v. Barnhart, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005) (citing Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)); see also Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989) ("[An] ALJ is required to explicitly indicate the weight given to relevant evidence."). As detailed below, the court is unable to determine why the ALJ appeared to completely disregard highly probative evidence relating to the day-to-day functioning of claimant in favor of evidence gathered in atypical one-on-one settings, and as such is unable to conclude that substantial evidence supports the ALJ's decision.

First, in assessing claimant's functioning in the domain of "attending and completing tasks," the ALJ noted:

> [C]laimant's teacher reported that . . . claimant had a serious problem with carrying out multi-step instructions with obvious problems in sustaining attention during play/sports activities; organizing her own things or school materials; completing class/homework assignments; completing work accurately without careless mistakes; and working at a reasonable pace/finishing on time.

(R. at 19.) This description of claimant in an everyday school setting tends to suggest a marked limitation in attending and completing tasks. By contrast, a number of one-on-one consultative exams suggested that "claimant did not appear to be overactive or fidgety," that "claimant's ADHD

5

was stable with the use of medication," and that "[n]o ADHD signs were noted upon examination." (Id.) Following this recitation of evidence, the ALJ summarily concluded: "Accordingly, the undersigned finds a less than marked limitation in this domain." (Id.)

Second, in assessing claimant's functioning in the domain of "interacting and relating with others," the ALJ again noted the teacher's questionnaire, stating:

> [C]laimant had an obvious problem with relating experience and telling stories with no more than slight problems in other activities. However, [the teacher] did note that ... claimant had been removed from the classroom because of her behavior, refusing to do her work, and for not communicating. [The teacher] also reported that ... claimant kept very much to herself and did not communicate with teachers or students very much. She stated that there were times when she would talk a little more than usual ... [and] also reported that almost all of ... claimant's speech was understood on the first attempt. Finally, she reported that ... claimant was a sweet child who tried very hard academically.

(R. at 20.) Again, this description of claimant in her typical school setting might suggest a marked limitation in attending and completing tasks. Once again, one-on-one consultative exams were somewhat at odds with this description.[3] In one such session, claimant was "friendly, cooperative, and pleasant," "had some problems with enunciation [but] her words were easily intelligible," and "was able to express herself adequately without any type of significant limitation in vocabulary." (Id.) In another, claimant was "alert and oriented and able to participate in medical examinations." (Id.) Giving slightly more context than in the previous domain, the ALJ stated: "[T]he undersigned finds that the claimant was generally able to interact with adults, her family, and peers without significant limitation. Accordingly, a less than marked limitation in this domain is found." (Id.)

---

[3] At least one of the consultative sessions discussed in reference to this domain actually appears to support a finding of marked limitation in "attending and completing tasks." Specifically, in a pediatric speech language pathology examination in February 2006, claimant "displayed stubborn behavior, ... often refused to answer difficult questions, ... was quick to abandon difficult tasks[,] and occasionally exhibited total non-compliance by refusing to respond to testing prompts." (R. at 20.)

6

In both of these domains, claimant "appear[ed] . . . less impaired on [the] . . . consultative examination[s] . . . than indicated by the information covering a longer period . . . [of] typical day-to-day functioning in routine situations." 20 C.F.R. § 416.924a(b)(6). Where claimant's case so clearly illustrates the principle laid out in § 416.924a(b)(6), the ALJ should at least reference that regulation, whether or not he is then required to explicitly identify particular evidence as "typical" or "unusual." Instead, the ALJ failed to note the principle laid out in this regulation, and failed to explain why he evidently found the evidence based on consultative examinations more probative of claimant's functioning than evidence based on claimant's typical day-to-day functioning over a longer period of time. As such, the court cannot determine that his findings were based on substantial evidence.

2. The ALJ Failed to Discuss the Weight Ascribed to the Evidence

According to defendant, the magistrate judge found that the ALJ's decision was not supported by substantial evidence in part because the ALJ failed to discuss the weight accorded to the treatment notes provided by claimant's treating physician and the report provided by the DDS consultative examiners. Defendant claims that the ALJ did not, in fact, fail to discuss the weight given to these items, citing to the ALJ's statement that "[t]he undersigned notes that none of the claimant's treating physicians have offered any medical opinion with regard to her functional limitations." (R. at 16.) Because the treating physicians offered no opinion with regard to claimant's functional limitations, defendant argues, there was no need to discuss the weight accorded to any such opinion. Although the DDS consultants are not mentioned in the ALJ's statement, defendant argues that the same rationale applies to their report.

Defendant misconstrues the magistrate judge's statement regarding the failure to describe the weight given to these opinions, which was made in the context of the ALJ's failure to explain why

7

he evidently found these opinions more probative of claimant's functioning than evidence based on claimant's typical day-to-day functioning over a longer period of time, as discussed above. If defendant is correct that the treating physicians and DDS consultative examiners offered "no opinion" with regard to claimant's functional limitations, then the ALJ plainly erred by relying on these sources in his analysis of those limitations. If the treating physicians and DDS consultative examiners did offer an opinion that affects the ALJ's determination of claimant's functional limitations, the ALJ is obligated to explicitly indicate the weight given to these opinions, and more specifically why they outweigh the evidence based on observations of day-to-day functioning by claimant's teacher.

## CONCLUSION

For the foregoing reasons, upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon a considered review of the uncontested proposed findings and conclusions, the court adopts as its own the magistrate judge's recommendations and rejects defendant's objections. Accordingly, plaintiff's motion for judgment on the pleadings (DE # 17) is GRANTED, defendant's motion for judgment on the pleadings (DE # 21) is DENIED, and this matter is REMANDED to the Commission for further proceedings consistent with this order. The clerk is DIRECTED to close the case.

SO ORDERED, this the 11th day of February, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge

8

Case 7:09-cv-00072-FL   Document 25   Filed 02/11/10   Page 8 of 8